UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLIFFORD IRBY, II (#581519)** | **CIVIL ACTION** |
| **VERSUS** | |
| **N. BURL CAIN, ET AL.** | **NO. 13-0327-SDD-RLB** |

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 19, 2014.

                                              **RICHARD L. BOURGEOIS, JR.**
                                              **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CLIFFORD IRBY, II (#581519)**                                                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                                            **NO. 13-0327-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (Rec. Doc. 8). This Motion is not opposed.

The *pro se* plaintiff, previously incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Major Daniel Davis, Capt. John Fall, MSgt. Anthony Bryant, III, and Sgt. Paulisha Reed, complaining that the defendants violated his First Amendment constitutional rights on December 23, 2012, when they charged him with a disciplinary report, placed him in administrative segregation, and thereafter subjected him to punishment in response to his refusal to attend a religious call-out at the prison.  The plaintiff also complains that the issuance of the referenced disciplinary report disrupted and interfered with a visit which he had scheduled with his family on the referenced date and resulted in his subsequent removal from a rehabilitation program which would have resulted in his earlier release from confinement.

In the instant Motion to Dismiss, the defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claims asserted against them in their official capacities for monetary damages.  However, although the defendants are correct that § 1983 does not provide a federal forum for a litigant

seeking monetary recovery against a state official acting in an official capacity, specifically because the official is then seen to be acting on behalf of the State and is not seen to be a "person" within the meaning of § 1983, *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the plaintiff in this case has named the defendants (with one exception) only in their individual capacities. *See* Complaint, Rec. Doc. 1, at pp. 5-6.  Further, a claim for monetary damages asserted against a state official in an individual capacity, seeking to impose *personal* responsibility for actions taken under color of state law, is allowable in federal court because such a claim is not seen to be asserted against the State but is asserted against the individual alone. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).  Finally, although the plaintiff *has* asserted an official capacity claim against a single defendant, Warden Burl Cain, the plaintiff has not prayed for monetary damages against this defendant but has prayed "only" for declaratory and injunctive relief. *See* Complaint, Rec. Doc. 1, at p. 5.  Accordingly, inasmuch as a claim for declaratory and injunctive relief asserted against a state official in an official capacity is not prohibited under the Eleventh Amendment, because such a claim is not treated as a claim against the State, *Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 *Am. Jur. 2d Civil Rights* § 101, there is no jurisdictional bar to such a claim.  Accordingly, the defendants' Motion should be rejected relative to the jurisdictional argument asserted therein.

      The defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted against them.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". *Bell Atlantic*

*Corp. v. Twombly*, *supra*, 550 U.S. at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that on December 20, 2012, a church gathering or religious "call-out" was scheduled at LSP, and he informed prison officials at that time, after arrival at the prison chapel, that he did not wish to attend because he does not agree to participate in any organized religious activities.  As a result, he was escorted back to his dormitory.  He was informed at that time, however, that he should in the future advise prison

officials in advance so as to avoid the need for prison officials to separately escort the plaintiff back to his dormitory from the chapel.  According to the plaintiff, when other inmates allegedly learned that the plaintiff was not required to attend religious call-outs, approximately twelve (12) co-inmates similarly stated that they too did not wish to attend religious call-outs.  Several days later, on the morning of Sunday, December 23, 2012, which was also the plaintiff's birthday, another religious call-out was scheduled.  Whereas attendance at this call-out was initially slated to be voluntary, a co-inmate minister allegedly asked a security officer, defendant John Fall, to make the call-out mandatory, and defendant Fall acquiesced in this request.  Accordingly, an announcement was made to this effect, whereupon the plaintiff and several other offenders informed defendant security officers Anthony Bryant and Paulisha Reed that they did not wish to attend.  The plaintiff also informed the defendants of the incident several days previously when he had been instructed to give advance notice of his intentions in this regard, and he informed the defendants that he had a family meeting scheduled to celebrate his birthday that morning, for which meeting family members had already arrived at the prison.  According to the plaintiff, defendant Capt. Fall then came to the dormitory and requested that all inmates who did not wish to attend the call-out should sign a list regarding that intent, and the plaintiff and ten or twelve co-inmates signed the referenced list.  Several minutes later, defendant Reed made an announcement that all inmates who did not attend the religious call-out would be placed in disciplinary administrative segregation.  As a result, whereas other inmates who had signed the list then changed their minds and attended the referenced call-out, the plaintiff persisted and was charged with a disciplinary violation and placed in administrative segregation.  According to the plaintiff, security officers at LSP often require that inmates attend religious call-outs and that

defendant Cain acquiesces in this conduct and also sometimes does the same himself, purportedly for the purpose of "filling the chapel" for particular religious call-outs.

In addition to the foregoing, the plaintiff asserts that after he was placed in administrative segregation on the morning of December 23, 2012, an unidentified security officer came and escorted the plaintiff, in restraints, to the plaintiff's scheduled meeting with the his family. The plaintiff complains, however, that the resulting birthday gathering was "ruined" because physical contact was not allowed (because of the pending disciplinary proceedings), and he was not permitted to eat cake or take pictures with his family members, all four of whom were of advanced age and had traveled a substantial distance to attend. The plaintiff also complains that his restraints were initially secured too tightly, and for a "brief" period, this caused his wrists and ankles to bleed and also caused his family to call for a security officer to loosen the restraints. According to the plaintiff, his family gathering ended in less than half an hour.

Finally, on December 27, 2012, the plaintiff attended a disciplinary board hearing chaired by defendant Daniel Davis in connection with the pending disciplinary charge, which accused the plaintiff of engaging in "Aggravated Disobedience." According to the plaintiff, defendant Davis wrongly induced the plaintiff to plead guilty to the referenced charge by offering a "verbal reprimand" as punishment instead of a transfer to punitive segregated confinement, and this resulted in the plaintiff then being allowed to return to his dormitory housing. The plaintiff complains, however, that when he thereafter appealed the disciplinary sentence and also filed an administrative grievance relative to the foregoing, prison officials ignored his disciplinary appeal and wrongly rejected his administrative grievance. The plaintiff further complains that, as a collateral result of the disciplinary conviction, he was later removed, on January 9, 2013, from a rehabilitative program in which he had been participating, and this resulted in his not completing

the program and in not receiving credits that would have allowed him to obtain an earlier release from confinement.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants assert that the plaintiff will be unable to establish that they have participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas*

*Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

Undertaking the qualified immunity analysis, the Court concludes that the defendants' Motion to Dismiss should be granted, dismissing the plaintiff's claims asserted herein, with prejudice. Specifically, the Court finds that the plaintiff's factual allegations are not sufficient to "raise [his] right to relief above the speculative level," as is necessary to defeat a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *See Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 555.

Addressing first the plaintiff's claim for declaratory and injunctive relief, the Court finds that this claim is not properly before the Court. Specifically, inasmuch as the plaintiff has since been released from confinement at LSP and is no longer subject to any alleged wrongful conduct at that institution, his claim for equitable relief has been rendered moot by such transfer and is no longer properly before the Court. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (recognizing that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot"). Accordingly, this aspect of the plaintiff's lawsuit is subject to dismissal for this reason.[2] In addition, inasmuch as the plaintiff has explicitly limited his claim asserted herein against defendant Warden Burl Cain to one "for

---

1. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

2. Although the plaintiff's allegations may be interpreted as complaining that the defendants' actions in forcing inmates to attend religious call-outs also violates the constitutional rights of other inmates, the law is clear that a *pro se* litigant has no standing to assert the civil rights of third parties injured by the defendants' alleged unlawful conduct. *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986). Accordingly, the plaintiff's allegations relative to harm allegedly suffered by other inmates should be disregarded.

declarative and injunctive relief only," *see* Complaint, Rec. Doc. 1, at p. 5, it is appropriate that this defendant be dismissed from this proceeding as well.[3]

In addition to the foregoing, the Court finds that any claim which the plaintiff may have for compensatory damages asserted against the remaining defendants is precluded by application of 42 U.S.C. § 1997e(e). This statute provides that an inmate plaintiff is barred from the recovery of compensatory damages for mental or emotional injury in the absence of some showing of physical injury. In the instant case, the plaintiff has failed to allege that he sustained any physical injury as a result of the actions of the defendants named in this proceeding.[4]

---

3. As noted above, the plaintiff alleges in his Complaint that defendant Cain has acquiesced in the practice of requiring that certain offenders attend and participate in religious services at LSP and has also engaged in this conduct himself, "for purposes of filling the chapel." *See* Rec. Doc. 1 at pp. 6-7. In addition, the plaintiff alleges in an Addendum to the original Complaint that defendant Cain specifically undertook this action on December 23, 2012. *See* Rec. Doc. 9 at p. 1 (stating specifically that "Warden Burl Cain ... gave the order to 'fill the chapel' on December 23, 2012"). Finally, the plaintiff alleges that defendant Cain was made aware of the events of December 23, 2012, but "did absolutely nothing to alleviate Plaintiff being disciplinarily infracted," *see* Rec. Doc. 1 at p. 14, and has done nothing to "restrain[] security from forcing LSP offenders to attend religious services against their will or suffer being punished." *See id.*

4. Although the plaintiff includes an allegation in his Complaint that he sustained physical injury after he was placed in administrative segregation by the defendants on December 23, 2012 – when he was escorted in overly tight restraints to his birthday gathering by a security officer on that date – the plaintiff has neither identified the security officer responsible for this wrongdoing nor named the officer as a defendant in this proceeding. Thus, it does not appear that there is any allegation of personal involvement on the part of the defendants named in this proceeding in the alleged misconduct. In this regard, in order for a prison official to face liability under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any assertion that the named defendants are responsible for the actions of the officer or co-employee who escorted the plaintiff on the referenced date, under a theory of vicarious responsibility or *respondeat superior*, is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that prison officials "may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Accordingly, in the absence of any allegation by the plaintiff

Further, the plaintiff appears to have accepted the limitation imposed by § 1997e(e) because he prayed in his original Complaint only for "punitive damages" against the defendants, *see* Rec. Doc. 1 at p. 16, although the Court notes that the plaintiff did pray for "compensation" in his Addendum to the original Complaint. *See* Rec. Doc. 9 at p. 3-4. Although § 1997e(e) does not preclude the recovery of punitive damages, *see Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007), the plaintiff would need to establish some constitutional violation by the defendants in order to merit such recovery.

Turning to a review of the plaintiff's potential claim for nominal or punitive damages, he asserts that his First Amendment constitutional right to the free exercise of his religious beliefs was abrogated by the defendants' actions in attempting to force him to attend a religious gathering on the morning of December 23, 2012, and in thereafter punishing him when he refused to attend. This, however, in the Court's view, is something of a mis-characterization of the plaintiff's claim because his allegations make clear that he was not in fact hindered or obstructed in the free exercise of his First Amendment religious rights. Instead, it is clear that he in fact exercised those rights by refusing to attend the religious gathering, and he was thus not compelled to engage in any religious practice with which he disagreed or prevented from practicing his sincerely-held religious beliefs. Accordingly, the plaintiff's claim is more

---

that the purported injury to his wrists and ankles was caused by the actions of any named defendant, the Court finds that the allegations relative to such injury are not sufficient to meet the "physical injury" requirement of 42 U.S.C. § 1997e(e). Moreover, the plaintiff explicitly acknowledges that the duration of the incident involving the restraints on December 23, 2012, was "brief" and, further, the courts have held that a mere too-tight application of restraints, without more, does not support a claim for relief under 42 U.S.C. § 1983. *See, e.g., Lockett v. New Orleans City,* 607 F.3d 992, 999 (5th Cir. 2010), *citing Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (finding that in the absence of a claim of malice, "handcuffing too tightly, without more, does not amount to excessive force").

properly characterized as an assertion that he was retaliated against for the exercise of his constitutional rights.

The taking of action against an inmate in retaliation for the inmate's exercise of his constitutional rights may itself amount to a violation of the inmate's constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v Powell,* 449 F.3d 682, 686 (5th Cir. 2006). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Woods v. Smith, supra,* 60 F.3d at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, *supra,* 449 F.3d at 684. *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Some acts, however, even though they may be motivated by retaliatory intent, are so *de minimis* that would not deter a person of ordinary firmness from further exercising his constitutional rights. *Morris v. Powell, supra, 449 F.3d at 686.* Such acts do not rise to the level of constitutional violations and cannot form the basis for a § 1983 claim. *Id.*

In the instant case, the chronology of events alleged by the plaintiff supports his claim of retaliation. Specifically, he asserts that he took action on December 23, 2012, specifically to exercise his First Amendment right to freedom of religion, by informing prison officials on that

date that he did not wish to attend the scheduled religious call-out. In direct response to this action, the defendants issued the plaintiff a disciplinary report charging him with "Aggravated Disobedience." The substance of the referenced report makes clear that the disciplinary charge was issued specifically because the plaintiff refused to attend the religious call-out. Specifically, the disciplinary report charged that the plaintiff with the offense after defendant Bryant "gave several verbal direct orders to Offender Clifford Irby ... to attend a mandatory church call-out [and] Offender Clifford Irby ... flatly refused." *See* Rec. Doc. 1-2 at p. 3. Thus, the plaintiff has alleged the exercise of a specific constitutional right, an adverse action taken against him because of that exercise, and a causative relationship between the two because the adverse action was taken in direct response to the exercise of the right. Notwithstanding, the Court finds that the retaliation claim must nonetheless fail because the plaintiff has not alleged a retaliatory adverse action that in this case was greater than *de minimis*.

The Fifth Circuit has not provided a bright line test for determining when a retaliatory action exceeds the *de minimis* threshold. Whereas a transfer to a less desirable job assignment has not been found to be greater than *de minimis*, a transfer to a more dangerous unit or job assignment may be. *Morris v. Powell, supra*, 449 F.3d at 687. It is appropriate for the Court to consider the frequency of occurrence and the length of duration of the retaliatory action in evaluating whether the *de minimis* threshold has been met. *See Gonzales v. Currie*, 2014 WL 222353, *5 (S.D. Tex. Jan. 21, 2014). For example, a denial of recreation or food on a single occasion is not seen to be greater than *de minimis*. *Ordaz v. Lynaugh*, 20 F.3d 1171 (5th Cir. 1994); *Dickerson v. Johnson*, 234 F.3d 29 (5th Cir. 2000). It has also been found that the issuance of a single disciplinary report that is later dismissed without punishment is no more than a *de minimis* adverse act. *See Smith v. Hebert*, 2011 WL 4591076, *8 (M.D. La. Aug. 26,

2011), *affirmed*, 533 Fed. Appx. 479 (5th Cir. 2013); *Ghosh v. McClure*, 2007 WL 400648, *11-12 (S.D. Tex. Jan. 31, 2007). *See also, Brightwell v. Lehman,* 637 F.3d 187, 194 (3rd Cir. 2011) (same); *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009) (same); *Starr v. Dube*, 334 Fed. Appx. 341 (1st Cir. 2009) (same). *Cf., Zarska v. Higgins*, 171 Fed. Appx. 255, 259-60 (10th Cir. 2006) (concluding, in contrast, that the mere filing of disciplinary charges, even if later dismissed, may support a claim of retaliation); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (same); *Dixon v. Brown*, 38 F.3d 379, 379-80 (8th Cir. 1994) (same).

In the instant case, the plaintiff was issued a disciplinary report on December 23, 2012, which resulted in his being placed in administrative segregation for a period of four days while awaiting a hearing on the disciplinary charge. Upon thereafter appearing before the disciplinary board on December 27, 2012, he agreed to plead guilty to the referenced charge and was sentenced only to a verbal reprimand. He was then allowed to return to his dormitory housing. In the Court's view, this retaliatory action amounted to no more than a *de minimis* adverse action and does not support the plaintiff's claim of retaliation.

In the first place, the verbal reprimand was a minor sanction which has been found to be insufficient to support a claim of retaliation. *See Gonzales v. Currie, supra*, 2014 WL 222353 at *14 (rejecting a retaliation claim where the punishment imposed was a verbal reprimand and the loss of five days of recreation). *See also Morris v. Powell, supra*, 449 F.3d at 685 (noting that the imposition of a "minor sanction" is not sufficient to support a retaliation claim). Second, with regard to the four days which the plaintiff spent in administrative segregation prior to the disciplinary hearing, the Fifth Circuit has concluded, in *Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003), that a disciplinary sentence of 27 days of "cell confinement," together with a loss of commissary privileges for a similar period, exceeds the *de minimis* threshold. In doing so, the

*Hart* Court relied upon jurisprudence from other Circuits and quoted a Sixth Circuit case for the proposition that an "action comparable to transfer to administrative segregation would certainly be adverse." *Id.* at 764, *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999). In *Hart*, however, the plaintiff's "cell confinement," while perhaps akin to administrative segregation, was punitive confinement of almost a month's duration and was imposed as punishment for the inmate's violation of prison rules. In the instant case, in contrast, the plaintiff was placed in administrative segregation for only four days and was so confined, not as part of an imposed punishment as in *Hart*, but as a period of temporary detention pending a resolution of the disciplinary charge. Thus, the situation in this case is more akin to that presented in *Smith v. Hebert*, *supra,* 533 Fed. Appx. at 481-82, where the Fifth Circuit upheld the dismissal of a retaliation claim asserted by an inmate who had allegedly been falsely charged with drug trafficking in prison and placed in administrative segregation pending an investigation and disciplinary hearing on the charge. Because the disciplinary charge was later dismissed without the imposition of any punishment, the district court concluded that the retaliatory adverse action was *de minimis* as a matter of law because no adverse punishment had been imposed. In upholding this determination, the Fifth Circuit also addressed the plaintiff's argument on appeal that his subsequent transfer to another housing unit at the prison was effectively a retaliatory punishment, concluding that, "even if so," the transfer itself was also a *de minimis* adverse act and so did not support the plaintiff's claim. *Id.* at 482. The Fifth Circuit thus accepted the district court's conclusion that the dismissed disciplinary charge and the minor sanction of a subsequent housing transfer were not sufficient to support a claim of retaliation under § 1983. In *Smith,* the Fifth Circuit did not address the period of time that the plaintiff had spent in administrative segregation prior to dismissal of the charge and, thus, implicitly found that such

confinement did not result in an adverse retaliatory act that was greater than *de minimis*.[5] Accordingly, as in *Smith,* this Court similarly concludes that the mere placement of the plaintiff in administrative segregation for a brief period of time after the issuance of the disciplinary report, for investigative purposes and prior to any finding of guilt or punishment in connection therewith, was not alone sufficient to meet or exceed the *de minimis* threshold where the resulting punishment was only a verbal reprimand.  To conclude otherwise would effectively require that this Court find in all instances that the mere issuance of a disciplinary report exceeds the *de minimis* threshold.  This is because, in this Court's experience, inmates at LSP are routinely placed in administrative segregation after the issuance of disciplinary charges to await subsequent disciplinary hearings.  Such disciplinary hearings, as here, normally occur within several days after issuance of the report and so normally result in deprivations of limited duration.   Accordingly, the Court finds that the plaintiff has failed to allege facts sufficient to support a claim of retaliation in this case.

In addition to the foregoing, the plaintiff also complains that, as a result of the defendants' actions, the birthday gathering which he had scheduled with his family for the morning of December 23, 2012, was "ruined."  The Court similarly concludes, however, that the resulting deprivation was *de minimis* in a constitutional sense.  In this regard, courts have

---

5.  *Cf., Rivera v. Salazar*, 221 Fed. Appx. 334 (5th Cir. 2007)., which arguably may be interpreted as implicitly upholding, without discussion, a lower court determination that a 22-day period of confinement in administrative segregation was a sufficiently adverse retaliatory act to exceed the *de minimis* threshold.  In *Rivera*, however, the lower court determination in this regard was *dicta* because that court ultimately granted summary judgment in favor of the defendants on the separate issue of causation.  *See Rivera v. Salazar*, 2005 WL 1828594 (S.D. Tex. March 5, 2005).  Also, the period of confinement in administrative segregation in *Rivera* was substantially longer than in the instant case, 22 days as opposed to 4 days, and the *Rivera* case involved two separate, allegedly retaliatory, disciplinary charges, only one of which was thereafter dismissed without punishment, resulting in the plaintiff being sentenced to punishment which was greater than *de minimis* in connection with the second disciplinary charge.

concluded that a mere denial or cancellation of a visit is no more than *de minimis* adverse action that is not sufficient to support retaliations claims under § 1983.  *See Johnson v. Thaler*, 2011 WL 4900004, *9 (E.D. Tex. Sept. 13, 2011) (referring to the denial of a visit as "an inconsequential or *de minimis* act").  *See also Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (upholding the dismissal of an inmate's claim, as frivolous, where the plaintiff complained of the denial of a visit with his mother on one occasion); *Clark v. Woods*, 2001 WL 123668, *3 (N.D. Tex. Jan. 16, 2001) (dismissing as frivolous an inmate's claim regarding an alleged retaliatory suspension of visitation privileges).  Further, inmates have no absolute constitutional right to enjoy contact visits with family members, and visitation privileges may be curtailed when deemed appropriate by prison officials.  *See Toppins v. Day*, 73 Fed. Appx. 84, *3 (5th Cir. 2003) (recognizing that an inmate has "no right to simple physical association – with [his] parents or anyone else – grounded in the first amendment," that under the Eighth amendment, "limitations on visitation may be imposed ... if they are necessary to meet legitimate penological objectives," such as "denying those in ... lockdown physical contact with visitors," and that under the Fourteenth Amendment, "a prisoner would only have a due process interest in visitation if a state statute created that interest").  Finally, it appears that the defendants' action, in any event, were not taken for the specific purpose of interfering with the plaintiff's scheduled family visit because the defendants threatened *all* of the inmates who refused to attend the religious call-out on that date with placement in administrative segregation.  Thus, the adverse effect which the defendants' actions had on the plaintiff's birthday gathering was merely a tangential or collateral result of the referenced disciplinary charge and was not retaliatory as such.  Accordingly, the plaintiff's claim relative to this deprivation should be rejected.[6]

---

6. To the extent that the plaintiff's allegations may be interpreted as complaining about hardship allegedly suffered by his family members as a result of limitations imposed on the

Finally, the plaintiff complains that on January 9, 2013, approximately two weeks after he pleaded guilty to the referenced disciplinary charge and was given a sentence of a verbal reprimand, he was removed from the "Phelps Re-Entry Program," which was a rehabilitative program in which he was participating at that time. According to the plaintiff, the reason for this removal was the finding of guilt in connection with the referenced disciplinary report, and he complains that this removal caused him to not complete the Program and, as a result, to not receive credit toward earlier release from confinement upon completion. This claim should be rejected. The plaintiff alleges no facts to support his assertion that his removal from the referenced Program was because of the referenced disciplinary charge and sentence, and he has not alleged that any defendant named in this proceeding was personally involved in the subsequent determination to remove him from the Program. *See Lozano v. Smith, supra*, 718 F.2d at 768 (requiring direct personal involvement by a defendant prison official in order to support a finding of liability under § 1983). Thus, the plaintiff's claim in this regard is speculative and is not supported by the facts alleged. Moreover, the plaintiff has no constitutional right to participate in prison rehabilitative programs, *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988), and there is no suggestion in the record that the plaintiff would have successfully completed the Phelps Re-Entry Program in any event. Accordingly, the plaintiff has failed to allege facts which support his claim for relief in this regard.

Finally, the plaintiff complains in this case of the defendants' handling of his disciplinary appeal and administrative grievance, specifically that the former was ignored and never processed and that the latter was improperly denied for procedural reasons. This claim is also

---

plaintiff's visit, the plaintiff fails to state a cause of action in this respect. As previously noted, the *pro se* plaintiff does not have standing to assert the rights of third persons who may have been harmed by the defendants' actions. *Coon v. Ledbetter, supra,* 780 F.2d at 1160.

not one of constitutional dimension. Specifically, the law is clear that the plaintiff does not have a constitutional right to have his disciplinary appeal or administrative claim properly investigated or favorably resolved. *Mahogany v. Miller*, 252 Fed. Appx. 593, 595 (5th Cir. 2007). Moreover, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Id.* at 373-74. Accordingly, the plaintiff's claim asserted against the defendants of an alleged failure to properly investigate, respond or take action in response to his disciplinary appeal and administrative grievance is without legal foundation, and the defendants are entitled to judgment as a matter of law in connection with this claim.

## RECOMMENDATION

It is recommended that the defendants' Motion to Dismiss (Rec. Doc. 8) be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on February 19, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**